IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CHEM-AQUA, INC.

    Movant,

    v.

NALCO COMPANY,

    Respondent.

Cause No. _____

**BRIEF IN SUPPORT OF NON-PARTY CHEM-AQUA INC.'S MOTION TO
QUASH OR MODIFY NALCO'S SUBPOENA, OR IN THE
<u>ALTERNATIVE, MOTION FOR PROTECTION</u>**

# TABLE OF CONTENTS

I.      JURISDICTION AND VENUE ........................................................................... 1

II.     STATEMENT OF FACTS .................................................................................. 1

   a.   The Parties .................................................................................................. 1

   b.   The Subpoena at Issue ................................................................................ 1

   c.   The Underlying Court's Rejection, in its Entirety, of Nalco's Subpoena to Non-Party Walchem ..................................................................................... 3

   d.   Nalco's History of Harassing Chem-Aqua for Discovery Purportedly for the Underlying Litigation, Including both Document and Deposition Subpoenas ................................................................................................... 4

III.    ARGUMENT ...................................................................................................... 8

   a.   Nalco's Subpoena Subjects Non-Party Chem-Aqua to an Undue Burden and Must be Quashed Under Fed. R. Civ. P. 45 ....................................... 8

   b.   The Underlying Court has Determined that the Subject Matter of Nalco's Deposition Subpoena Topics 3, 19, ad 20 are Not Relevant to the Underlying Litigation ................................................................................... 9

   c.   The Underlying Court has Determined that the Subject Matter of Nalco's Deposition Subpoena Topics 9, 11, 13, 15, and 17 are Not Relevant to the Underlying Litigation ........................................................................... 10

   d.   The Underlying Court has Determined that the Subject Matter of Nalco's Deposition Subpoena Topics 5-8, 10, 12, 14, 16, and 18 are Not Relevant to the Underlying Litigation ...................................................................... 11

   e.   Non-Party Chem-Aqua's Knowledge of Nalco's Patented Technology, which Nalco Seeks in Deposition Subpoena Topics 1-2 and 21-23, has No Relevance to the Underlying Patent Infringement Litigation Between Entities Unrelated to Chem-Aqua .............................................................. 12

   f.   Nalco's Failure to Show the Relevance of any Substantive Deposition Subpoena Topic to the Underlying Litigation Renders Topics 24 and 25, Regarding Non-Party Chem-Aqua's Possession and Search for Documents Relevant to the Underlying Litigation, Premature and Unduly Burdensome .................. 14

   g.   Nalco's Subpoena Requires Non-Party Chem-Aqua to Disclose Privileged or Other Protected Matter and so Must be Quashed Under Fed. R. Civ. P. 45 ................................................................................................................ 14

   h.   Nalco's Subpoena Requires Non-Party Chem-Aqua to Disclose a Trade Secret or other Confidential Research, Development, or Commercial Information and so May be Quashed Under Fed. R. Civ. P. 45 ...................... 15

   i.   Alternatively and Additionally, Chem-Aqua Seeks an Order of Protection from Nalco's Abusive Use of the Instant Deposition Subpoena and Any Other Nalco Subpoena in the Underlying Litigation ...................................... 16

IV.     RELIEF SOUGHT ........................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Bagwell v. Rival Consumer Sales Corp.*,
EP-06-CA-117-FM, 2006 U.S. Dist. LEXIS 76929 (W.D. Tex. Sept. 15, 2006) ..................... 12

*Cmedia, LLC v. LifeKey Healthcare. LLC*,
216 F.R.D. 387 (N.D. Tex. 2003) ................................................................................................ 15

*Echostar Commc'ns Corp. v. The News Corp. Ltd.*,
180 F.R.D. 391 (D. Col. 1998) .................................................................................................... 15

*EON Corp. IP Holdings, LLC v. T-Mobile USA, Inc.*,
No. 12-cv-080082-LHK PSG, 2012 WL 1980361 (N.D. Cal. June 1, 2012) ........................... 10

*In re Stewart Title Co.*,
No. H-09-247, 2009 U.S. Dist. LEXIS 51559 (S.D. Tex. June 17, 2009) ................................. 15

*In re Vitamins Antitrust Litig.*,
267 F. Supp. 2d 738 (S.D. Ohio 2003) ....................................................................................... 16

*Mick Haig Prods., e.K. v. Does*,
3:10-CV-1900-N, 2011 U.S. Dist. LEXIS 128366 (N.D. Tex. Sept. 9, 2011) ......................... 13

*Nidec Corp. v. Victor Co. of Japan*,
249 F.R.D. 575 (N.D. Cal. 2007) .................................................................................................. 9

*Orchestrate HR, Inc. v. Trombetta*,
No. 3:13-cv-2110-P, 2014 U.S. Dist. LEXIS 24995 (N.D. Tex. Feb. 27, 2014) ........................ 8

*Rickels v. City of S. Bend, Indiana*,
33 F.3d 785 (7th Cir. 1994) ........................................................................................................... 7

*Truswal Systems Corp. v. Hydro-Air Eng'g, Inc.*,
813 F.2d 1207, 1210 (Fed. Cir. 1987) .......................................................................................... 8

*Williams v. City of Dallas*,
178 F.R.D. 103, 112 (N.D. Tex. 1998) .......................................................................................... 8

**Rules**

Fed. R. Civ. P. 26(c) .................................................................................................................. 1, 7

Fed. R. Civ. P. 37 ........................................................................................................................... 7

Fed. R. Civ. P. 45(d)(3)(A) ............................................................................................... 1,7,14,15

Non-party Chem-Aqua, Inc. ("Chem-Aqua") respectfully submits this Brief in support of its Motion to Quash or Modify Nalco's Subpoena, or in the Alternative, Motion for Protection.

## I.  JURISDICTION AND VENUE

This Court has subject matter jurisdiction and venue over this matter pursuant to Fed. R. Civ. P. 45(d)(3)(A), which provides that on timely motion the issuing court must quash or modify a subpoena, and Fed. R. Civ. P. 26(c), which provides that on timely motion a non-party may seek protection from the court in the district where the subpoena has been served.  Service of the subpoena on Chem-Aqua occurred in Irving, Texas, in the Northern District of Texas, and as such, jurisdiction and venue properly rest in this Court.

## II.  STATEMENT OF FACTS

### a.  The Parties

Chem-Aqua is a privately-held Texas corporation with its principle place of business in Irving, Texas.  Chem-Aqua is a wholly owned water treatment subsidiary of NCH Corporation. Respondent Nalco Company ("Nalco") filed a lawsuit against Turner Designs, Inc. ("Turner") on June 13, 2013 in the Northern District of California, Case No. CV-13-02727, alleging infringement of U.S. Patent No. 6,255,118 by Turner's Little Dipper In-Line Fluorometer (the "underlying litigation").  (App. at 4-27, Ex. A.)  Chem-Aqua has no substantive relationship to Nalco or to the underlying litigation.  Rather, Chem-Aqua is a direct competitor to Nalco and a non-party to the underlying litigation.  (App. at 28-48, Ex. B.)

### b.  The Subpoena at Issue

On April 24, 2014, Nalco served non-party Chem-Aqua with a Subpoena to Testify at a Deposition in a Civil Action ("Deposition Subpoena").  (App. at 49-56, Ex. C.)  In the Deposition Subpoena, Nalco lists the following third-party Rule 30(b)(6) topics about which it

requires that Chem-Aqua provide testimony:

1. Your knowledge of the '118 patent and any predecessor thereto.
2. Your knowledge of Nalco's 3D TRASAR System.
3. Your communications with Turner.
4. Your communications with Walchem Iwaki.
5. Any and all of Chem-Aqua's products that function with any Turner Designs Little Dipper.
6. The design and development of any of Chem-Aqua's systems that function with any Turner Designs Little Dipper.
7. The operation of any of Chem-Aqua's systems that function with any Turner Designs Little Dipper.
8. The identity of all parties involved in the design, development, manufacture, and/or sale of any of Chem-Aqua's systems that function with any Turner Designs Little Dipper.
9. Manuals, instructions, examples, and other guidance used to instruct others in the use of the Little Dipper.
10. Manuals, instructions, examples, and other guidance used to instruct others in the use of any of Chem-Aqua's systems that function with any Turner Designs Little Dipper.
11. Sales, marketing, and distribution of the Little Dipper.
12. Sales, marketing, and distribution of any of Chem-Aqua's systems that function with any Turner Designs Little Dipper.
13. Price(s), revenues, costs, gross profits, net profits, and market share analysis for the Little Dipper.
14. Price(s), revenues, costs, gross profits, net profits, and market share analysis for any of Chem-Aqua's systems that function with any Turner Designs Little Dipper.
15. The operation and use of The Little Dipper in industrial water systems.
16. The operation and use of any of Chem-Aqua's systems that function with any Turner Designs Little Dipper, in industrial water systems.
17. The identity of the end-users of the Little Dipper.
18. The identity of the end-users of any of Chem-Aqua's systems that function with any Turner Designs Little Dipper.
19. Chem-Aqua's business relationship with Nalco, including any agreements entered into between Chem-Aqua and Nalco.
20. Chem-Aqua's business relationship with Turner, including any agreements entered into between Chem-Aqua and Turner.
21. The facts and circumstances relating to when Chem-Aqua first became aware of the existence of the '118 patent and what actions Chem-Aqua took with respect to the '118 patent upon becoming aware of the patent.
22. All studies, analyses, investigations, or opinions containing the validity and/or enforceability of the '118 patent.
23. Any opinions of counsel regarding the infringement, validity, and enforceability of the '118 patent.
24. Your preservation of, search for, and production of documents and

electronically stored information responsive to the document subpoena served in Chem-Aqua in this lawsuit, including but not limited to methods and techniques related to the processing, storage, retrieval and production of ESI.

25. The location and storage of documents which are potentially relevant to this lawsuit by any officer, director, employee, or other representative of Chem-Aqua, including the identity of all past and current officers, directors, employees, or other representatives who may have such documents.

(*Id.* at 54-56.)

### c.   The Underlying Court's Rejection, in its Entirety, of Nalco's Subpoena to Non-Party Walchem

Previously, on October 28, 2013, Nalco had served non-party Walchem with a document subpoena in the underlying litigation.  (App. at 57-67, Ex. D.)  According to Nalco, "[t]hird party Walchem Iwaki America, Inc. ("Walchem") resells a Turner product (a fluorometer known as the Little Dipper) that is used in the accused process" of the underlying litigation.  (App. at 70, Ex. E.)

According to Nalco, the purpose of its subpoena to Walchem was to discover:

(1) documents sufficient to identify Walchem's products that function with Turner Designs' Little Dipper Fluorometer, (2) documents sufficient to identify Walchem's customers that use any Walchem system (including Walchem's WebMasterONE) that functions with the Little Dipper Fluorometer, (3) documents relating to any purchase by Walchem of the Little Dipper, and (4) documents relating to any sales by Walchem of the Little Dipper.

(App. at 70, 76, Exs. E and F.)  However, Walchem resisted Nalco's subpoena and on February 10, 2014, Nalco filed a Motion to Compel against Walchem in the same court as the underlying litigation.  (App. at 68-73, Ex. E.)  On March 31, 2014, the court deciding the underlying litigation denied on relevance grounds the entirety of Nalco's Motion to Compel, as discussed in more detail below.  (App. at 77-78, Ex. F.)[1]

---

[1] During a meet and confer that occurred today, May 6th, Nalco informed Chem-Aqua that it had filed for reconsideration of the underlying court's order denying its Motion to Compel.  (*See* App. at 159-169, Court Filing.)  According to Nalco, Walchem's brief is due today, and the underlying court is scheduled to decide the issue tomorrow, May 7th.  Regardless of the

**d. Nalco's History of Harassing Chem-Aqua for Discovery Purportedly for the Underlying Litigation, Including both Document and Deposition Subpoenas**

Indeed, on November 21, 2013, Nalco had also served Chem-Aqua with a Revised Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action ("Document Subpoena"). (App. at 79-84, Ex. G.) This Document Subpoena is substantially similar to the one that Nalco had served on Walchem, and that the court deciding the underlying litigation refused to enforce. (*Compare* App. at 57-67, 79-84, Exs. D and G.) Further, in the Document Subpoena, Nalco demanded the production of documents responsive to topics substantially similar to the topics Nalco lists in its Deposition Subpoena. (*Compare* App. at 49-56, 79-84, Exs. C and G.)

Initially, Chem-Aqua objected to Nalco's Document Subpoena on the grounds that it "seeks sensitive, private, proprietary and confidential information." (App. at 87, Ex. H.) Nalco's first response to Chem-Aqua's objections "attached the Protective Order issued in the underlying litigation which should [have] alleviate[d] any of Chem-Aqua's confidentiality concerns." (App. at 113-117, Ex. I.) Nalco's response unsurprisingly did nothing to alleviate Chem-Aqua's confidentiality concerns, as Chem-Aqua detailed the problems with the underlying litigation's protective order in the very first paragraph of Chem-Aqua's objections to the Document Subpoena:

Chem-Aqua objects that the Subpoena seeks sensitive, private, proprietary, and

underlying court's decision, Chem-Aqua's analysis as set forth in this brief remains the same. In its brief, Nalco states that it seeks reconsideration only with respect to "the list of Walchem's Little Dipper customers and the list of Walchem products that function with the Little Dipper." (App. at 161, Court Filing.) With respect to a product list, Chem-Aqua has already produced this to Nalco. (*See* App. at 34, Ex. B.) With respect to the customer list, the underlying court determined as a legal matter that the list is irrelevant to the underlying litigation. (App. at 77-78, Ex. F ("Nalco's only explanation for needing documents related to Walchem's sale of the Little Dipper is that it is relevant to 'damages and infringement.' But Nalco does not explain how it could recover damages from Turner for Walchem's resale of the Little Dipper.").)

> confidential information and the protective order supplied by Nalco does not provide adequate protection for non-parties. For example only, Chem-Aqua objects to Paragraphs 7.2(b) (Disclosure of "CONFIDENTIAL" Information or Items) and 7.3(b) (Disclosure of "HIGHLY CONFIDENTIAL-ATTORNEYS' EYES ONLY" Information or Items) as inadequately protecting Chem-Aqua's sensitive, proprietary information because it allows disclosure of Chem-Aqua's competitive information to certain Nalco officers, directors, and in-house counsel.

(App. at 87-88, Ex. H.)

Through the meet-and-confer process, the parties agreed to revise the protective order.

(App. at 28-48, Ex. B.)  However, Nalco repeatedly refused to file the revised protective order stipulation with the court in the underlying litigation.  (*Id.* at 38-39.)  In response, Chem Aqua stated:

> Chem-Aqua will comply with its obligations under the subpoena but <u>cannot agree to Nalco's refusal to file the stipulation regarding the agreed modifications to the protective order.  Chem-Aqua still maintains its objections to this subpoena and reiterates that it is a direct competitor with Nalco</u>.  Therefore, Chem-Aqua will not forgo any rights to enforce via contempt proceedings the <u>disclosure of its sensitive information</u>.  Simply having a contract between the parties regarding the treatment of competitive information is not sufficient.  And moreover, as <u>Chem-Aqua was not a party to the underlying protective order</u>, it is prudent that the court and parties to Nalco's underlying litigation be made aware of any unilateral decisions on modifying the terms of said protective order.

(*Id*. at 37 (emphasis added).)  Nalco continued harassing Chem-Aqua, refusing to file the revised protective order with the court until Chem-Aqua would confirm that it "will produce substantially all of its responsive documents <u>today</u>."  (*Id.)* (emphasis added).)  Nalco even tried to insist that Chem-Aqua, as a non-party, bear the burden and expense to "produce documents electronically, as Concordance .dat load files containing single page .tif images and associated document-level OCR text," which Chem-Aqua rightfully refused.  (*Id.* at 42.)

In the spirit of cooperation, on February 13, 2014, Chem-Aqua produced documents from three custodians that were responsive to six search terms Nalco provided and Nalco finally filed the revised protective order in the underlying litigation.  (*See id.* at 40.)  Nalco initially agreed to

Chem-Aqua's search strategy.  (*Id.* at 41-42.)  However, a week later on February 20, 2014, Nalco wrote to Chem-Aqua to complain that Chem-Aqua's relevance and confidentiality objections to Nalco's Document Request No. 13 "are insufficient" because "Request No. 13 is a narrowly tailored request seeking only documents adequate to identify these specific Chem-Aqua's [sic] customers.  This information is relevant to Nalco's infringement claims and cannot be obtained from Turner Designs or other third parties"—arguments that Nalco attempted, without success, with Walchem also.  (*Id.* at 34.)

Following another meet-and-confer, on March 5, 2014, Nalco and Chem-Aqua agreed to "table any further discussion regarding Nalco's [document] subpoena pending first the outcome of the discovery dispute between Nalco and third-party Walchem."  (*Id.* at 32.)  Because "the Walchem dispute is similar in nature" and "ripe for determination by the underlying court where Nalco's patent dispute resides, the court's determination, in [Chem-Aqua's] estimate, will be instructive for all parties involved."  (*Id.*)

As explained in more detail below, on March 31, 2014, the court deciding the underlying litigation denied in its entirety Nalco's Motion to Compel in the Walchem dispute.  (App. at 74-78, Ex. F.)  Nevertheless, on April 10, 2014, Nalco again contacted Chem-Aqua for a meet-and-confer "regarding Chem-Aqua's document production in response to Nalco's subpoena."  (Ex. B. at 32.)  On April 16, 2014, Chem-Aqua confirmed in yet another meet-and-confer with Nalco that "Chem-Aqua will not be producing any additional documents in response to Nalco's subpoena, citing Chem-Aqua's objections and the Court's order on Nalco's Motion to Compel Walchem's documents."  (App. at 118-120, Ex. J; *see* App. at 85-112, Ex. H; App. at 125-158, Ex. L.)

As a transparent end-run around the underlying court's ruling that Nalco's third party

document subpoenas are irrelevant and unduly burdensome, Nalco informed Chem-Aqua during

this same meet-and-confer that "Nalco would be serving Chem-Aqua with [the instant]

deposition subpoena."  (App. at 119, Ex. J.)  It is from this Deposition Subpoena that Chem-

Aqua now seeks protection from this Court in the form of quashing, or alternatively modifying,

Nalco's subpoena.

On May 5, 2014, Chem-Aqua wrote to Nalco, requesting a meet-and-confer, pursuant to

the Northern District of Texas local rules, regarding the instant Motion.  Specifically, Chem-

Aqua wrote:

> Chem-Aqua does not intend to have a witness available for deposition at the time
> and location Nalco issued.  Due to the broad nature of irrelevant topics in the
> subpoena, the continuing request for confidential, privileged competitor
> information, the use of subpoena to conduct what amounts to pre-suit patent
> infringement investigation, and what appears to be an end-run around your
> underlying court's recent decision to quash burdensome third-party subpoenas,
> Chem-Aqua will be moving in the Northern District of Texas to quash this
> subpoena and seek a protective order from continued discovery in Nalco's
> underlying litigation.

(*See* App. 123, Ex. K.)  Not surprisingly, also on May 5, 2014, in apparent retaliation against

Chem-Aqua's refusal to provide a witness to testify to Nalco's overbroad and unduly

burdensome Deposition Subpoena, Nalco, for the first time, indicated its intent "to file a motion

to compel Chem-Aqua to produce documents responsive to Nalco's [Documents S]ubpoena" and

to use Chem-Aqua's requested meet-and-confer call as a vehicle for pursuing that motion.[2]  (*See*

*id.* at 122.)

---

[2] To the extent that Nalco files another similarly unjustified and unsupported motion to compel as
it did with non-party Walchem, Chem-Aqua will similarly seek protection and attorney's fees
from that motion under Fed. R. Civ. P. 37.  Nalco's retaliatory intended motion to compel is the
type of discovery abuse that Fed. R. Civ. P. 37(a)(5)(A) seeks to prevent.  *See Rickels v. City of
S. Bend, Indiana*, 33 F.3d 785, 787 (7th Cir. 1994) ("Fee shifting when the judge must rule on
discovery disputes encourages their voluntary resolution and curtails the ability of litigants to use
legal processes to heap detriments on adversaries (or third parties) without regard to the merits of
the claims.").

## III. ARGUMENT

Under Fed. R. Civ. P. 45, a court *must* quash or modify a subpoena if it (1) fails to allow a reasonable time for compliance; (2) requires a person who is not a party to travel more than 100 miles from where the person resides; (3) requires disclosure of privileged or protected matter; or (4) subjects a person to undue burden.  Fed. R. Civ. P. 45(d)(3)(A)(i)-(iv).  Non-party Chem-Aqua moves to quash Nalco's Deposition Subpoena under Rule 45(d)(3)(A)(iv) because the Deposition Subpoena subjects Chem-Aqua to an undue burden, and under Rule 45(d)(3)(A)(iii) because the Deposition Subpoena requires Chem-Aqua to disclose privileged or other protected matters.

### a.  Nalco's Subpoena Subjects Non-Party Chem-Aqua to an Undue Burden and Must be Quashed Under Fed. R. Civ. P. 45

There can be no doubt that Nalco's Deposition Subpoena subjects Chem-Aqua to an undue burden.  "The Court must balance the need for discovery by the requesting party and the relevance of the discovery to the case against the harm, prejudice or burden to the other party." *Orchestrate HR, Inc. v. Trombetta*, No. 3:13-cv-2110-P, 2014 U.S. Dist. LEXIS 24995, at *5 (N.D. Tex. Feb. 27, 2014) (citing *Truswal Systems Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207, 1210 (Fed. Cir. 1987)).  One factor for the Court to consider "in assessing the burden of complying with a subpoena is whether the moving party is a non-party to the litigation." *Orchestrate HR, Inc.*, 2014 U.S. Dist. LEXIS 24995, at *5 (citing *Williams v. City of Dallas*, 178 F.R.D. 103, 112 (N.D. Tex. 1998)).  Chem-Aqua is a non-party to the underlying litigation.

Additional "factors that the court may consider in determining whether there is an undue burden are relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Williams*, 178 F.R.D. at 109 (internal quotations and citations

8

omitted).  This Court also has held that "[a] facially overbroad subpoena is unduly burdensome."

*Orchestrate HR, Inc.*, 2014 U.S. Dist. LEXIS 24995, at *5 (citing *Williams*, 178 F.R.D. at 109).

> **b. The Underlying Court has Determined that the Subject Matter of Nalco's Deposition Subpoena Topics 3, 19, ad 20 are Not Relevant to the Underlying Litigation**

The topics that Nalco sets forth in its Deposition Subpoena are not relevant to the underlying litigation, and the same court deciding the underlying litigation has already so determined.  In its Order Denying Nalco's Motion to Compel documents from similarly-situated non-party Walchem, the court deciding the underlying litigation has already held that "Nalco has not met its burden of establishing that its need for the information warrants the burden of production placed on non-party Walchem."  (App. at 77, Ex. F.)  Specifically, "for documents related to Turner's sale of the Little Dipper to Walchem, Nalco has not explained why it cannot get these documents from Turner, who is a party to this litigation.  This alone is sufficient to warrant denying Nalco's request to compel this category of documents."  (*Id.*, citing *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575 (N.D. Cal. 2007) ("There is simply no reason to burden nonparties when the documents sought are in possession of the party defendant.").)

Here, Deposition Subpoena Topics 3, 19, and 20, copied below, all seek information that is also in the possession of a party to the underlying litigation—either Nalco or Turner.[3]

- 3.  Your communications with Turner.
- 19.  Chem-Aqua's business relationship with Nalco, including any agreements entered into between Chem-Aqua and Nalco.
- 20.  Chem-Aqua's business relationship with Turner, including any agreements entered into between Chem-Aqua and Turner.

---

[3] In addition, these deposition topics are overbroad and so unlimited in scope that they potentially request Chem-Aqua to provide a witness to testify about every possible communication that two of Nalco's competitors may have had, as well as all aspects of Chem-Aqua's business relationship with two of its competitors.

9

(App. at 54-55, Ex. C.)  Thus, just as with the Walchem subpoena, Nalco cannot establish that its

need for the above information warrants the burden placed on non-party Chem-Aqua.

> ### c.   The Underlying Court has Determined that the Subject Matter of Nalco's Deposition Subpoena Topics 9, 11, 13, 15, and 17 are Not Relevant to the Underlying Litigation

Additionally, in Nalco's Statement Regarding Discovery Dispute with non-party

Walchem, Nalco argued to the court deciding the underlying litigation that its "document

subpoena on Walchem that requested information regarding sales and use of the Little Dipper []

is relevant to issues including damages and infringement."  (App. at 70, Ex. E.)  In rejecting

"Nalco's only explanation for needing documents related to Walchem's sale of the Little Dipper"

which was that this topic "is relevant to 'damages and infringement,'" the court correctly pointed

out that "Nalco does not explain how it could recover damages from Turner for Walchem's

resale of the Little Dipper."  (App. at 77, Ex. F.)  The court deciding the underlying litigation

thus held that "Nalco's vague assertion of relevance is not sufficient to warrant the burden

imposed on non-party Walchem in producing these documents."  (*Id.*, citing *EON Corp. IP

Holdings, LLC v. T-Mobile USA, Inc.*, No. 12-cv-080082-LHK PSG, 2012 WL 1980361, at *1

(N.D. Cal. June 1, 2012) ("the party issuing the subpoena must demonstrate that the information

sought is relevant and material to the allegations and claims at issue in the proceedings.").)

Topics 9, 11, 13, 15, and 17 of Nalco's Deposition Subpoena to Chem-Aqua similarly

request "information regarding sales and use of the Little Dipper":

- 9.  Manuals, instructions, examples, and other guidance used to instruct others in the use of the Little Dipper;
- 11.  Sales, marketing, and distribution of the Little Dipper;
- 13.  Price(s), revenues, costs, gross profits, net profits, and market share analysis for the Little Dipper;
- 15.  The operation and use of The Little Dipper in industrial water systems;
- 17.  The identity of the end-users of the Little Dipper.

(App. at 54-55, Ex. C.)  Because Nalco has already had the opportunity and yet failed to explain

the relevance of these topics to the court deciding the underlying litigation, Nalco cannot

establish that its need for the above information warrants the burden placed on non-party Chem-

Aqua.

### d.  The Underlying Court has Determined that the Subject Matter of Nalco's Deposition Subpoena Topics 5-8, 10, 12, 14, 16, and 18 are Not Relevant to the Underlying Litigation

The court in the underlying litigation further extended this holding to documents related

to "products designed to work with the Little Dipper," because "Nalco has not explained why

these documents are relevant at all, yet alone why their relevance outweighs the burden to be

imposed on [a] non-party . . . ."  (App. at 77-78, Ex. F.)  Topics 5-8, 10, 12, 14, 16, and 18 in

Nalco's Deposition Subpoena to Chem-Aqua fall within this further category held to be

irrelevant to the underlying litigation:

- 5.  Any and all of Chem-Aqua's products that function with any Turner Designs Little Dipper.
- 6.  The design and development of any of Chem-Aqua's systems that function with any Turner Designs Little Dipper.
- 7.  The operation of any of Chem-Aqua's systems that function with any Turner Designs Little Dipper.
- 8.  The identity of all parties involved in the design, development, manufacture, and/or sale of any of Chem-Aqua's systems that function with any Turner Designs Little Dipper.
- 10.  Manuals, instructions, examples, and other guidance used to instruct others in the use of any of Chem-Aqua's systems that function with any Turner Designs Little Dipper.
- 12.  Sales, marketing, and distribution of any of Chem-Aqua's systems that function with any Turner Designs Little Dipper.
- 14.  Price(s), revenues, costs, gross profits, net profits, and market share analysis for any of Chem-Aqua's systems that function with any Turner Designs Little Dipper.
- 16.  The operation and use of any of Chem-Aqua's systems that function with any Turner Designs Little Dipper, in industrial water systems.
- 18.  The identity of the end-users of any of Chem-Aqua's systems that function with any Turner Designs Little Dipper.

(App. at 54-55, Ex. C.)

Additionally, because the court deciding the underlying litigation has already

denied Nalco's Motion to Compel against Walchem in its entirety on relevance grounds,

Topic 4 of Nalco's current Deposition Subpoena—Chem-Aqua's "communications with

Walchem Iwaki"—is similarly irrelevant.[4]  (*See* App. at 74-78, Ex. F.)

> **e. Non-Party Chem-Aqua's Knowledge of Nalco's Patented Technology, which Nalco Seeks in Deposition Subpoena Topics 1-2 and 21-23, has No Relevance to the Underlying Patent Infringement Litigation Between Entities Unrelated to Chem-Aqua**

The next category of topics—regarding Chem-Aqua's knowledge of Nalco's

technology and/or patent asserted in the underlying litigation—like the topics discussed

in the court's Order Denying Nalco's Motion to Compel—has zero relevance to the

underlying litigation.  It is inconceivable how a *non-party*'s knowledge of a patented

technology could have any relevance to a patent infringement litigation involving entirely

unrelated entities.  Yet, Nalco has continued its pattern of propounding irrelevant and

burdensome discovery on non-parties, with Deposition Subpoena Topics 1-2 and 21-23 to

Chem-Aqua:

- 1.  Your knowledge of the '118 patent and any predecessor thereto.
- 2.  Your knowledge of Nalco's 3D TRASAR System.
- 21.  The facts and circumstances relating to when Chem-Aqua first became aware of the existence of the '118 patent and what actions Chem-Aqua took with respect to the '118 patent upon becoming aware of the patent.
- 22.  All studies, analyses, investigations, or opinions containing the validity and/or enforceability of the '118 patent.
- 23.  Any opinions of counsel regarding the infringement, validity, and enforceability of the '118 patent.

(App. at 54-55, Ex. C.)

---

[4] In addition, this deposition topic is overbroad and so unlimited in scope that it potentially requests Chem-Aqua to provide a witness to testify about <u>every</u> possible communication that two of Nalco's competitors may have had.

These Deposition Subpoena topics are relevant only to Nalco's improper fishing expedition and apparent Rule 11 investigation for pre-suit evidence of alleged patent infringement and validity, and on that basis, are unduly burdensome to non-party Chem-Aqua.  *See Bagwell v. Rival Consumer Sales Corp.*, EP-06-CA-117-FM, 2006 U.S. Dist. LEXIS 76929, at *8-9 (W.D. Tex. Sept. 15, 2006) (Granting a party motion to quash where Plaintiff's "Notice of Deposition and attached subpoena duces tecum, on its face, represent nothing more than a fishing expedition."  Because Plaintiffs "failed to show that the information they seek from [Defendant's former employee] is relevant to their claims or reasonably calculated to lead to admissible evidence in this case[,] . . . the Court finds that Plaintiffs' Notice of Deposition and accompanying subpoena duces tecum is unduly burdensome and should be quashed.")

Moreover, the pretext of Nalco's subpoenas to Chem-Aqua (following the pattern of Nalco's subpoena to Walchem), seeking information that could only be relevant to a suit *against Chem-Aqua or Walchem* for patent infringement, strongly indicates that Nalco is abusing its power to subpoena third parties, and in doing so is treating third parties identically to defendants.  Nalco's cavalier use of a Deposition Subpoena for a Rule 11 fishing expedition, after failing in its attempts to obtaining similar information through Document Subpoenas to both Walchem and Nalco, constitutes an abuse of the subpoena power, and Chem-Aqua respectfully requests that this Court quash the Deposition Subpoena to protect Chem-Aqua from Nalco's abuse.  *See, e.g.*, *Mick Haig Prods., e.K. v. Does*, 3:10-CV-1900-N, 2011 U.S. Dist. LEXIS 128366, at *17 (N.D. Tex. Sept. 9, 2011) ("'To knowingly abuse the subpoena power is an affront to the fair and impartial administration of justice and is subject to sanctions under the inherent power of

13

the court,' and the Federal Rules." (quoting *In re Air Crash at Charlotte, N.C.*, 982 F.

Supp. 1092, 1101 (D.S.C. 1997)) (internal modification omitted)).

     **f.   Nalco's Failure to Show the Relevance of any Substantive Deposition Subpoena Topic to the Underlying Litigation Renders Topics 24 and 25, Regarding Non-Party Chem-Aqua's Possession and Search for Documents Relevant to the Underlying Litigation, Premature and Unduly Burdensome**

     Finally, because Nalco has failed to demonstrate a relevant and reasonable basis

for third-party discovery from Chem-Aqua, interrogation into Chem-Aqua's possession

and search for documents relevant to the underlying litigation is premature and similarly

unduly burdensome.  The final topics of Nalco's Deposition Subpoena to Chem-Aqua—

topics 24 and 25—fall within this category of irrelevant and burdensome discovery:

- 24.  Your preservation of, search for, and production of documents and electronically stored information responsive to the document subpoena served in Chem-Aqua in this lawsuit, including but not limited to methods and techniques related to the processing, storage, retrieval and production of ESI.
- 25.  The location and storage of documents which are potentially relevant to this lawsuit by any officer, director, employee, or other representative of Chem-Aqua, including the identity of all past and current officers, directors, employees, or other representatives who may have such documents.

(App. at 55-56, Ex. C.)

     Because each and every topic Nalco includes in its Deposition Subpoena to

Chem-Aqua is irrelevant and consequently unduly burdensome to a non-party, Chem-

Aqua respectfully submits that Fed. R. Civ. P. 45(D)(3)(A)(iv) requires this Court to

quash or modify the entirety of Nalco's Deposition Subpoena.

     **g.   Nalco's Subpoena Requires Non-Party Chem-Aqua to Disclose Privileged or Other Protected Matter and so Must be Quashed Under Fed. Civ. P. 45**

     Fed. R. Civ. P. 45(D)(3)(A)(iii) similarly requires that a court quash or modify a

subpoena that requires disclosure of privileged other protected matter.

Topics 21-23 of Nalco's Deposition Subpoena, discussed above, on their face call for the disclosure of privileged matter:

- 21. The facts and circumstances relating to when Chem-Aqua first became aware of the existence of the '118 patent and <u>what actions Chem-Aqua took with respect to the '118 patent upon becoming aware of the patent</u>.
- 22. All <u>studies, analyses, investigations, or opinions containing the validity and/or enforceability of the '118 patent</u>.
- 23. Any <u>opinions of counsel</u> regarding the infringement, validity, and enforceability of the '118 patent.

(App. at 55, Ex. C.)  As a result, Fed. R. Civ. P. 45(D)(3)(A)(iii) requires the quashing or modification of these topics.  Numerous other Topics, such as Nos. 1-4 additionally have the potential to call for the disclosure of privileged matter.  (*See id.* at 5.)  As such, Chem-Aqua respectfully requests that the Court quash Topic Nos. 1-4 and 21-23 pursuant to Fed. R. Civ. P. 45(D)(3)(A)(iii), or in the alternative, modify these Topics so that they no longer require the disclosure of privileged matter.

**h.  Nalco's Subpoena Requires Non-Party Chem-Aqua to Disclose a Trade Secret or other Confidential Research, Development, or Commercial Information and so May be Quashed Under Fed. R. Civ. P. 45**

The Court also may quash or modify a subpoena if it requires disclosing a trade secret or other confidential research, development, or commercial information.  *See* Fed. R. Civ. P. 45(d)(3)(B)(i).  "Disclosure to a competitor is presumptively more harmful than disclosure to a non-competitor." *Educ. Logistics, Inc. v. Laidlaw Transit, Inc.*, 2011 U.S. Dist. No. 3-11-MC-036-L-BD, LEXIS 38442, at *5 (N.D. Tex. Apr. 8, 2011) (citing *Cmedia, LLC v. LifeKey Healthcare. LLC*, 216 F.R.D. 387, 390 (N.D. Tex. 2003) and *Echostar Commc'ns Corp. v. The News Corp. Ltd.*, 180 F.R.D. 391, 395 (D. Col. 1998)).  Both parties agree that Nalco and Chem-Aqua are direct competitors.  (*See* App. at 28-48, Ex. B.)  Chem-Aqua strenuously objected to Nalco's Document Subpoena on the grounds that it "seeks sensitive, private, proprietary and

confidential information." (App. at 87, Ex. H.) Nalco apparently agrees, as it responded by "attach[ing] the Protective Order issued in the underlying litigation which should alleviate any of Chem-Aqua's confidentiality concerns." (App. at 113-117, Ex. I.) Many of Nalco's Deposition Subpoena Topics, including Topic Nos. 3-4, 6-18, and 20-23, raise similar concerns. (*See* App. at 54-55, Ex. C.)

Courts have acknowledged the potential harm, and consequently quashed subpoenas, when the required disclosure was (1) of confidential information, (2) to a competitor, and (3) by a non-party. *See, e.g.*, *In re Stewart Title Co.*, No. H-09-247, 2009 U.S. Dist. LEXIS 51559, at *5 (S.D. Tex. June 17, 2009) ("Moreover, the Court is concerned that Stewart Title is a <u>non-party</u> who would be entrusting the <u>confidentiality</u> of its documents to parties who do not represent its interests. Such concern, although perhaps not dispositive on its own, lend weight to the arguments for quashing discovery. *See also In re Vitamins Antitrust Litig.*, 267 F. Supp. 2d 738, 741-742 (S.D. Ohio 2003) ("where <u>direct competitor</u> sought <u>confidential information</u> from <u>non-party</u>, this weighed against discovery.") (emphasis added). All three of these factors exist here. For this reason, Chem-Aqua respectfully requests that this Court quash Nalco's Deposition Subpoena pursuant to Fed. R. Civ. P. 45(d)(3)(B)(i).

> **i. Alternatively and Additionally, Chem-Aqua Seeks an Order of Protection from Nalco's Abusive Use of the Instant Deposition Subpoena and Any Other Nalco Subpoena in the Underlying Litigation**

In the alternative, Chem-Aqua requests that this Court modify the Deposition Subpoena or enter an Order of Protection on behalf of Chem-Aqua to (1) minimize the burden on Chem-Aqua of responding to irrelevant discovery, (2) no longer require that Chem-Aqua disclose privileged matter, and (3) protect Chem-Aqua from the potential harm caused by disclosing its confidential information to its direct competitor.

Additionally, Chem-Aqua requests that this Court enter an order protecting Chem-Aqua from further involvement in the underlying litigation, including in response to Nalco's instant Deposition Subpoena or any other subpoena that Nalco has served or may serve on Chem-Aqua purporting to seek discovery for the underlying litigation.

## IV. RELIEF SOUGHT

Non-party Chem-Aqua respectfully requests that this Court (1) Quash Nalco's Deposition Subpoena, (2) protect Chem-Aqua from further involvement in the underlying litigation, (3) award Chem-Aqua attorney fees and costs incurred in bringing this Motion, pursuant to Fed. R. Civ. P. 26(c)(3) and 37(a)(5), and (4) award Chem-Aqua all other relief to which Chem-Aqua is entitled.

If the Court chooses not to quash the Deposition Subpoena in its entirety, Chem-Aqua alternatively moves the Court to modify the Deposition Subpoena or enter an Order of Protection on behalf of Chem-Aqua to (1) minimize the burden on Chem-Aqua of responding to irrelevant discovery, (2) no longer require that Chem-Aqua disclose privileged matter, and (3) protect Chem-Aqua from the potential harm caused by disclosing its confidential information to its direct competitor.

Dated:  May 6, 2014                              Respectfully submitted,


                                                 /s/ *Rajkumar Vinnakota*                    
                                                 G. Donald Puckett
                                                 Texas Bar No. 24013358
                                                 Rajkumar Vinnakota
                                                 Texas Bar No. 24013358
                                                 Eliot J. Walker
                                                 Texas Bar No. 24058165
                                                 Sarah E. Simmons
                                                 Texas Bar No. 24083860
                                                 **SKIERMONT PUCKETT LLP**
                                                 2200 Ross Avenue, Suite 4800W
                                                 Dallas, Texas 75201
                                                 (214) 978-6600 (Telephone)
                                                 (214) 978-6601 (Facsimile)
                                                 donald.puckett@skiermontpuckett.com
                                                 kumar.vinnakota@skiermontpuckett.com
                                                 eliot.walker@skiermontpuckett.com
                                                 sarah.simmons@skiermontpuckett.com

                                                 ***Attorneys for Third Party,***
                                                 ***Chem-Aqua, Inc.***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on May 6, 2014, a true and correct copy of the foregoing document was served electronically via ECF filing, and served via email and US Mail on the following:

Bryan Wilson
Morrison & Foerster LLP
755 Page Mill Road
Palo, Alto, CA 94304

Scott F. Llewellyn
Morrison & Foerster LLP
5200 Republic Plaza
370 17th Street
Denver, CO 80202

Whitney E. McCollum
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105

By:     /s/ *Sarah E. Simmons*
      Sarah E. Simmons
